A11A1378. CITY OF ALBANY v. FREENEY et al.
(720 SE2d 349)

SMITH, Presiding Judge.

The City of Albany ("the city") appeals from a trial court's order enforcing a settlement between the city and Linda and George

---

Freeney, contending genuine issues of material fact preclude enforcement of the alleged settlement. The city also asserts that the trial court erred by awarding attorney fees under OCGA § 9-15-14 without holding a hearing and without making the requisite findings of fact and conclusions of law. For the reasons set forth below, we reverse.

A de novo standard of review applies to a trial court's order on a motion to enforce a settlement agreement. *DeRossett Enterprises v. Gen. Elec. Capital Corp.*, 275 Ga. App. 728 (621 SE2d 755) (2005).

> Because the issues raised are analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the appellant's case. Thus, we view the evidence in a light most favorable to the nonmoving party. . . .

(Citations, punctuation and footnotes omitted.) Id.

So viewed, the record shows that the attorneys representing the opposing parties in this action disagree as to whether the city agreed to settle the Freeneys' property damage claims separately from their personal injury claims during a settlement conference. The attorneys agree that they met on May 19, 2010 to discuss settlement. Several others were also present.

The city's attorney submitted an affidavit claiming that he "made an offer in the amount of $104,902.19 to settle all of the Freeneys' claims" during the conference, an offer the Freeneys rejected. In his deposition, the city's attorney testified unequivocally that there were "never any offers made by the [c]ity to bifurcate this into settling property damage . . . [separate from] personal injury. All of the offers by the [c]ity were to settle the entire claims of the Freeneys."

The Freeneys' attorney submitted an affidavit in which he averred that at the conclusion of the meeting, the city's attorney "offered $29,902.19 for [p]laintiffs' property damage claims and $75,000 for [p]laintiffs' personal injury claims. [The city]'s attorney did not state, and never stated, that these offers were combined offers that had to be accepted together or not at all."

A former city employee who was present at the settlement conference submitted an affidavit about her recollection of what was said during the conference. She claimed that the city's attorney "plainly stated" that the city did "not dispute and agreed to pay the property damages claims of the Freeneys. . . . [The city's attorney]

made it clear that the only remaining issue was how to best resolve the Freeney[s'] . . . personal injury claims." She explained that the city's attorney offered $75,000 to settle the Freeneys' personal injury claims "in addition to the amount[ ] for property damage which [was] not in dispute. The offered amounts were not stated in terms of a combined property damage and personal injury settlement." According to the city employee, no city representative ever stated during the May 19, 2010 meeting or any other meeting that the Freeneys

> had to accept the personal injury and property damage offers together, or not at all. It was very clear and understood by all in attendance, that the property damage and personal injury offers were made separately and independently of the other . . . because resolution of the property damage claims was never in issue.

Other city employees also present at the May 19, 2010 meeting submitted affidavits in which they averred that an offer was made during the settlement conference to settle all of the Freeneys' claims for $104,902.19 and that the city's attorney "never stated that the [c]ity agreed to pay solely the property damage claim[ ]. . . ."

Following the settlement conference, the Freeneys' attorney sent a four-page letter to the city's attorney outlining his position on the city's liability for the personal injury claim. At the conclusion of the letter, he stated that his clients "will accept the offer to pay off the property damage in full in the amount of $29,902.19, but regarding the personal injury claim they have requested that I reject your counteroffer of $75,000 . . . and make a counteroffer . . . for their combined personal injury claims."

The city did not respond to this letter or another letter sent the following day. The city's attorney explained that he did not respond in writing to the May 19, 2010 letter because the counteroffer was too high and the city was not "interested in settling it at that price." He considered the acceptance of the alleged property damage settlement offer as "self-serving" because "there wasn't any offer to accept for just property damage."

The plaintiffs' attorney contends that during the May 26, 2010 conference call, the city's attorney verbally acknowledged its obligation to settle the property damage claim separately; the city's attorney denies doing so. The city's attorney contends that the city accepted the Freeneys' offer to settle all of their claims for $58,431.24 during the conference call. According to the city's attorney, the parties subsequently disagreed about whether an $11,000 expense should be deducted from the $58,431.24 settlement amount,

but the city ultimately agreed to bear the cost of this expense. The Freeneys' attorney disputes that a settlement of all claims was ever reached.

The Freeneys subsequently sued the city for specific performance to enforce the alleged $29,902.19 property damage settlement. The trial court granted summary judgment in the Freeneys' favor, reasoning:

> Here, Defendant offered to pay Plaintiffs the sum of $29,902.19 in resolution of Plaintiffs' claims for property damage. On the same date, Plaintiffs counsel accepted, in writing, the Defendant's offer. Plaintiffs sent multiple letters confirming the existence of the settlement. Defendant never denied or refuted the existence of a valid property damage settlement. See *Sutton v. Winn Dixie Stores*, 233 Ga. App. 424, [4]26 (504 SE2d 245) (1998) (holding that acquiescence or silence when the circumstances require an answer or denial may amount to an admission). The Court finds that a settlement of Plaintiffs' property damage claim was reached.

The trial court also awarded attorney fees sua sponte based upon a conclusory finding "that Defendant's position in this matter lacked substantial justification and that there was no justiciable issue of law or fact interjected by Defendant. See OCGA § 9-15-14."

1. The city asserts the trial court erred by entering summary judgment in favor of the Freeneys because genuine issues of material fact exist as to whether it ever offered to settle the property damage claims separately, as to whether the May 19, 2010 letter confirming the alleged settlement was sufficient to establish the existence and terms of the settlement, and as to whether it rebutted any presumption flowing from its failure to respond in writing to letters confirming the alleged property damage settlement. We agree.

"Oral settlement agreements are enforceable if their existence is established without dispute." (Citation and punctuation omitted.) *Reichard v. Reichard*, 262 Ga. 561, 564 (2) (423 SE2d 241) (1992). But "where the very existence of the agreement is disputed, it may only be established by a writing." (Citation and punctuation omitted.) *Abrams v. Abrams*, 262 Ga. 170 (1), n. 1 (416 SE2d 88) (1992).

> This requirement of a writing goes to the certainty that an agreement exists and to the certainty of the terms of the agreement. . . . The writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by

attorneys which memorialize the terms of the agreement reached will suffice.

*Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 676 (308 SE2d 544) (1983). While letters or documents from one party's attorney "will suffice" to establish written evidence of a settlement, such letters do not *require* entry of summary judgment in that party's favor in every case. Cf. *Moreno v. Strickland*, 255 Ga. App. 850, 852-853 (1) (567 SE2d 90) (2002) (holding written file notes of attorney provided "some evidence" of existence of settlement agreement creating issue of fact); *Scott v. Carter*, 239 Ga. App. 870, 873, n. 1 (521 SE2d 835) (1999) (noting that record did not reflect that party's attorney agreed to specific terms of letter confirming alleged settlement).

In this case, the attorneys representing both parties disagree about whether a settlement agreement of the property damage claim exists. The city's attorney contends its oral settlement offer was conditioned upon the settlement of all claims (personal injury and property damage). The Freeneys' attorney claims that he accepted the city's oral offer to settle the property damage claim separately. Consequently, there are genuine issues of material fact with regard to the existence of a settlement between the parties, and the trial court erred in granting summary judgment in favor of the Freeneys. *McKenna v. Capital Resource Partners*, 286 Ga. App. 828, 833-834 (2) (a) (650 SE2d 580) (2007) (finding genuine issues of material fact as to existence of settlement despite existence of writings regarding settlement).

We find no merit in the Freeneys' argument that the city's attorney's failure to promptly dispute their purported acceptance of the earlier offer on May 19, 2010, *mandates* summary judgment in their favor. While this conduct may provide admissible evidence on the issue, any evidentiary presumption created by the city's attorney's failure to respond would be for the trier of fact to determine, based upon the city's attorney's explanation that he viewed it as a counteroffer to which no reply was needed. "[T]he presumption arising from a failure to answer a letter is not a presumption of law, but one of fact, and subject to explanation. [Cits.]" *Ga. Health Care v. Loeb*, 151 Ga. App. 350, 351 (2) (259 SE2d 734) (1979).

2. Based upon our holding in Division 1, we reverse the trial court's award of attorney fees under OCGA § 9-15-14. *Tavakolian v. Agio Corp.*, 304 Ga. App. 660, 666 (6) (697 SE2d 233) (2010).

*Judgment reversed. Mikell, C. J., and Dillard, J., concur.*

DECIDED NOVEMBER 29, 2011.

*Jenise S. Smith*, for appellant.
*Flynn, Peeler & Phillips, Patrick S. Flynn*, for appellees.