**SECOND DIVISION
BARNES, P. J.,
MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**January 16, 2014**

# In the Court of Appeals of Georgia

A13A2159. KEMPER v. BROWN et al.

MILLER, Judge.

Amy Marie Kemper appeals from the trial court's order granting Christopher Brown's motion to enforce a settlement agreement in a personal injury action arising from a motor-vehicle accident. Kemper contends that Brown did not unconditionally and unambiguously accept her settlement offer, and that his purported acceptance amounted to a counteroffer. For the reasons that follow, we reverse.

We apply a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement. Because the issues raised are analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the Appellant's case. Thus, we view the evidence in a light most favorable to the nonmoving party.

(Punctuation and citation omitted.) *Johnson v. DeKalb County*, 314 Ga. App. 790, 791 (726 SE2d 102) (2012).

So viewed, the evidence shows that on March 10, 2012, Kemper was riding her motorcycle when she was struck by a vehicle driven by Brown. Kemper suffered serious injuries and was transported by air to Atlanta Medical Center to receive emergency medical care. Brown was charged with multiple traffic violations, including reckless driving and driving under the influence.

At the time of the accident, Brown had an automobile insurance policy issued by Equity Insurance Company ("Equity") and the policy had a per person bodily coverage limit of $25,000. Kemper's insurer, Progressive Insurance Company, notified Equity of the loss, and Equity assigned the claim to its third-party claims administrator, Statewide Claims Services ("Statewide").

On May 18, 2012, while Kemper was at the hospital receiving treatment for her injuries, she sent a demand letter to Statewide. The letter provided, in relevant part,

> Please send all the insurance money that Mr. Brown had under his insurance policy. In exchange, I will agree to sign a limited release.

2

The release must not have any language saying that I will have to pay Mr. Brown or his insurance company any of their incurred costs.

The check should be made payable to Amy M Kemper and the check and release must be delivered to my address . . . . It must be delivered no later than June 8, 2012 (21 days) from today's date.

. . . .

If you fail to meet my demand, I will be forced to hire an attorney and sue Mr. Brown and your company. Please do not contact me, or my friends[,] as this demand is very simple. (Emphasis omitted.)

On June 5, 2012, Statewide sent a letter to Kemper agreeing to settle her claims for the limits of Brown's liability insurance. Attached to the letter was a $25,000 check and a two-page limited liability release form. The letter stated, in relevant part, "[i]n concluding the settlement, we are entrusting that you place money in an escrow account in regards to any and all liens pending. This demand is being asserted to protect the lien's interest[.]" The limited liability release form also contained indemnification language providing that Kemper would agree to indemnify Equity and Brown "in the event any entity makes a claim against any one them either for reimbursement of medical bills or other treatment expenses ____ incurred for treatment following, and as a result of, said accident, for subrogation or for statutory right of reimbursement."

On July 31, 2012, Kemper, who had retained counsel, notified Statewide that she considered the June 5, 2012 letter to be a counteroffer because it contained a demand that she place settlement funds into an escrow account. Kemper stated that she was rejecting the counteroffer and she subsequently filed suit against Brown. Brown answered and filed a motion to enforce the purported settlement agreement. The trial court granted Brown's motion,[1] and this appeal ensued.

1. Kemper contends that the purported settlement agreement was not enforceable because Brown's response, through Statewide, to her settlement demand was not unconditional or identical to the terms of her offer. In particular, Kemper argues that Statewide's demand that she place settlement funds into an escrow account constituted a counteroffer. We agree.

> The law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced. In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties.

---

[1] Although Kemper was notified that the matter was set for a hearing, neither she nor counsel appeared at the hearing.

(Citation and punctuation omitted.) *Johnson*, supra, 314 Ga. App. at 793 (1). "[S]ettlement agreements must meet the same requirements of formation and enforceability as other contracts." (Footnote omitted.) *Torres v. Elkin*, 317 Ga. App. 135, 141 (2) (730 SE2d 518) (2012). To establish a contract, the offer must be accepted unequivocally and without variance of any sort. *Anderson v. Benton*, 295 Ga. App. 851, 855 (1) (673 SE2d 338) (2009). A purported acceptance of an offer that varies even one term of the original offer is a counteroffer. *Butler v. Household Mtg. Svcs.*, 266 Ga. App. 104, 106 (1) (596 SE2d 664) (2004).

In deciding whether a purported acceptance imposes conditions rendering it a counteroffer, we must consider whether additional terms are "precatory words." *Torres*, supra, 317 Ga. App. at 141 (2). "Precatory words are words whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction." (Citation and punctuation omitted.) *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994).

Applying these principles to the facts in this case, we conclude that Statewide's the June 5, 2012 letter to Kemper clearly constituted a counteroffer. In that letter, Statewide *demanded* that Kemper place settlement funds into an escrow account for the purpose of protecting the interests of any pending liens. Statewide's response did

5

not merely inquire about the existence of liens against Kemper's causes of action. See

*McReynolds v. Krebs*, 290 Ga. 850, 853-854 (2) (725 SE2d 584) (2012) (holding that

a mere request for confirmation regarding existence of liens will not transform a

purported acceptance into a counteroffer, but adding condition involving resolution

of liens will). Rather, by using the term "demand," Statewide clearly expressed a

condition that Kemper was required to satisfy for Statewide's acceptance to be

effective. See id. (purported acceptance letter imposed additional condition of lien

resolution as part of settlement); *Frickey v. Jones*, 280 Ga. 573, 575 (630 SE2d 374)

(2006) (purported acceptance letter conditioned settlement upon resolution of medical

liens not mentioned in offer); *Torres*, supra, 317 Ga. App. at 142-143 (2) (purported

acceptance letter included conditional language requiring satisfaction of liens). A

reasonable person in the position of Kemper would interpret this "demand" as a

mandatory direction, rather than a mere recommendation.[2] *Torres*, supra, 317 Ga.

---

[2] Brown argues that the "demand" to place settlement funds into an escrow account was eliminated when Kemper's counsel confirmed that she had health insurance and, therefore, there should be no liens filed by any of her medical providers. The fact that Kemper had health insurance did not necessarily, however, preclude a hospital from filing a lien for any unpaid expenses. See *MCG Health, Inc. v. Kight*, __ Ga. App. __, *5 (Case No. A13A1149, decided Nov. 22, 2013). Nevertheless, regardless of whether any liens could be filed against Kemper's causes of action, Statewide's demand constituted a new condition that varied from Kemper's offer. See *Butler*, supra, 266 Ga. App. at 106 (1).

App. at 142 (2) (language stating "I trust that your office will satisfy any liens arising out of this matter," imposed a new condition that transformed purported acceptance to counteroffer). Therefore, we construe Statewide's response as a counteroffer rather than an unconditional and unequivocal acceptance, and we conclude that no binding settlement agreement was formed. See *Frickey*, supra, 280 Ga. at 575-576; *Torres*, supra, 317 Ga. App. at 142-143 (2).

2. Since we conclude that Statewide's response was a counteroffer, we need not address Kemper's other challenges to the purported acceptance. Accordingly, we reverse the trial court's order granting Brown's motion to enforce settlement.

*Judgment reversed. Barnes, P. J., and Ray, J., concur.*