**THIRD DIVISION
MILLER, P. J.,
MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 21, 2016**

# In the Court of Appeals of Georgia

A16A0453. PARTAIN v. PITTS et al.

McMILLIAN, Judge.

Kimberly Partain appeals the trial court's order denying her motion to enforce a settlement agreement in this personal injury action arising from a motor vehicle accident. In her sole enumeration of error, Partain argues that the trial court erred in finding that the parties had not reached an enforceable settlement agreement. We agree and reverse.

The salient facts are not in dispute, and we apply a de novo review. *Smith v. Hall*, 311 Ga. App. 99, 100 (714 SE2d 742) (2011). In October 2010, Partain's vehicle collided with the rear of Elizabeth and James Pitts' vehicle. The Pitts filed suit on October 5, 2012, alleging that Partain's negligence caused Elizabeth to suffer bodily injury and James to suffer loss of consortium. On October 9, 2012, their

attorney, Stephen Carter, sent a settlement demand letter to a claims adjuster for State Farm Mutual Automobile Insurance Company ("State Farm"), the liability carrier for Partain. In it, Carter provided State Farm with a time-limited settlement demand for Partain's $50,000 policy limit. Carter also noted:

> As previously stated, the settlement opportunity provided herein shall remain open for acceptance up through 5:00 p.m. Eastern Time on Friday, October 26, 2012, *or* until said offer and settlement opportunity is first rejected, whichever occurs first.
>
> For this settlement offer and opportunity to be ***timely*** accepted, I must ***receive*** your company's $50,000 check made jointly payable to **"Elizabeth P. Pitts and Stephen C. Carter, P.C., her attorney"** by the stated deadline. If this settlement opportunity is timely accepted, Mrs. Pitts will execute the original of the enclosed Limited Liability Release and I will mail the original executed Limited Liability Release back to your attention before your company's $50,000 check is negotiated.

(Emphasis in original.)

On October 19, 2012, Craig Avery, counsel hired by State Farm to defend its insured, sent an email to Carter, notifying him of State Farm's acceptance:

> In case the adjuster hasn't already informed you, State Farm is accepting your settlement offer. . . . Please email me a copy of your LLR [Limited Liability Release] as it was not included in the materials State Farm sent

2

to me. Also, State Farm drafts are technically not checks, so let me know if that's a problem so I can resolve that issue prior to the deadline.

Shortly thereafter, the adjuster sent a check for $50,000 enclosed in a letter with a salutation directed to "Attorney Avery," which included some instructions clearly intended for Avery. However, for reasons that are unclear, the letter was addressed and delivered to Carter. And the enclosed check was made out to "Elizabeth Pitts & Jimmy Pitts, Individually & as Husband and Wife & Stephen C. Carter, P.C., their Attorney." Upon realizing the mistake, the adjuster reissued a check made out to "Elizabeth P. Pitts and Stephen C. Carter, P.C., her attorney" and had it hand delivered to Carter on October 25, 2012.

Carter, however, informed Avery that he viewed the initial check as a counter-offer, and therefore a rejection of his clients' settlement demand. He also notified Avery that the Pitts rejected State Farm's "post-rejection effort to accept the settlement opportunity" by means of the reissued check. Partain later filed a motion to enforce settlement, which the trial court denied before granting the parties a certificate of immediate review. This appeal followed.

In deciding whether the parties entered into an enforceable settlement agreement, we are governed by well-established principles. Compromises of doubtful rights are upheld by general policy, as tending

3

to prevent litigation, in all enlightened systems of jurisprudence. In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed.

(Citation omitted.) *Turner v. Williamson*, 321 Ga. App. 209, 212 (738 SE2d 712) (2013). Below, and on appeal, the Pitts argue that only the timely delivery of a $50,000 check made jointly payable to Elizabeth Pitts and Carter could constitute acceptance of their settlement offer and that Carter's receipt of the non-conforming check constituted State Farm's rejection and counter-offer, such that no settlement agreement was ever reached by the parties.

It is true, as the Pitts argue, that "[a]n offer may be accepted either by a promise to do the thing contemplated therein, or by the actual doing of the thing. The offer must be accepted in the manner specified by it; and . . . if it calls for an act, it can be accepted only by the doing of the act." (Citation and punctuation omitted). *Hansen v. Doan*, 320 Ga. App. 609, 612 (1) (740 SE2d 338) (2013). Conversely, "[a] purported acceptance of a plaintiff's settlement offer which imposes conditions will be construed as a counter-offer to the offer to settle for the [insurance] policy limits." (Citation and punctuation omitted.) *Frickey v. Jones*, 280 Ga. 573, 574 (630 SE2d 374) (2006).

4

Here, the record shows that the October 22, 2012 letter from the adjuster was meant for Avery, State Farm's attorney, and thus cannot be considered a communication imposing additional conditions on the offer. In addition to the salutation referencing Avery, the body of the letter further confirmed that Avery was the intended recipient, directing him to:

> Please proceed with obtaining the properly executed Order of Dismissal and Release and return, along with your final billing.

Were it directed to Carter, as counsel for plaintiffs, this instruction would make no sense. Accordingly, it is clear that Carter was the unintended recipient of an inadvertently disclosed communication from a client to her attorney. Because the privileged nature of a communication between an attorney and client is not lost if an attorney inadvertently discloses it, Carter may not use this inadvertent disclosure as evidence of a counter-offer to his clients' settlement demand. See *Rouse v. State*, 275 Ga. 605, 607 (5) (571 SE2d 353) (2002) (cross-examination based on taped interview between lawyer and client not permitted where record was devoid of evidence that client authorized release of tape). See generally *Lazar v. Mauney*, 192 FRD 324, 330 (N.D. Ga. 2000) (admonishing attorneys who exploited document inadvertently

disclosed in discovery after deceiving opposing counsel into believing that the document was being returned).

Moreover, evidence that the adjuster may have intended Avery to confirm whether the check would be accepted as drawn has no legal effect because Avery never made that inquiry. In the post-script to the letter intended for Avery, the adjuster noted the following:

> Please be advised there is a $3,700.00 hospital lien that has been presented to State Farm and plaintiff attorney instructed us to issue payment [without] Mrs. Pitts['] spouse listed on payment but includes Mr. Pitts in the suit under consortium. Please confirm if check as it appears will be accepted. Thank you.

However, even if we were to assume that the adjuster's request to Avery constitutes a communication to Carter, "a mere request for confirmation does not constitute a counteroffer." *Hansen*, 320 Ga. App. at 613 (1). Thus, the adjuster's precatory language directed to Avery asking him to seek confirmation as to the acceptability of the check as presented was not a counteroffer. See *Turner*, 321 Ga. App. at 214 (2) (because insurance company's communication included precatory words rather than mandatory direction, it did not impose a new condition on the settlement). And Avery's subsequent delivery of a conforming check — within the time frame

6

specified by the Pitts — constituted acceptance, and a binding contract was then formed.[1] See *Newton v. Ragland*, 325 Ga. App. 371, 375 (1) (750 SE2d 768) (2013) (insurer's acceptance letter contained precatory rather than mandatory words, and transmittal of the policy limits within the offer's deadline formed a binding settlement agreement). Thus, the trial court erred in denying Partain's motion to enforce settlement.

*Judgment reversed. Miller, P. J., and McFadden, J., concur*.

---

[1] The Pitts assert that Partain argues for the first time on appeal that the delivery of the conforming check to Carter's office on October 25, 2012 was timely and that we therefore need not consider this argument. However, the record clearly belies this assertion.